UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * * * * * * *
Kevin Porter & Vincent Chaney          *
                                       *
v.                                     *       Civil Action No. 1:20-cv-01210-JL
                                       *
Willie Scurry et al.                   *
* * * * * * * * * * * * * * * * * * * * * * * *
```

**MEMORANDUM OF LAW SUPPORTING
MOTION TO ALTER OR AMEND JUDGMENT**

Defendants, Willie Scurry and Denise Hartley, file this memorandum of law supporting their motion to alter or amend the judgment of this Court, dated November 6, 2025, denying their motion for summary judgment on the basis of qualified immunity and state as follows:

**INTRODUCTION**

On November 6, 2025, this Court issued a decision with respect to Defendants' motions for summary judgment, in which it granted and denied aspects of the Defendants' motions for summary judgment. (ECF Doc. 113.) Pertinent to the present motion before the Court, the Court concluded that Willie Scurry and Denise Hartley were not entitled to summary judgment on the basis of qualified immunity. As discussed below and pursuant to Federal Rule of Civil Procedure 59(e), Scurry and Hartley respectfully request that the Court alter or amend its order and grant them qualified immunity with respect to Plaintiffs' claims against them because the Court, in rendering its decision on qualified immunity, made certain manifest errors of fact and/or law.[1]

---

[1] By circumscribing the arguments in this motion to qualified immunity, Defendants Scurry and Hartley do not waive any factual or legal arguments available to them.

**STANDARD OF REVIEW**

This Court may grant a Federal Rule of Civil Procedure Rule 59(e) motion based on an intervening change in the law, a manifest error of law or fact underlying the judgment, or newly-discovered evidence that could not have been produced before judgment entered. Deka Int'l S.A. v. Genzyme Corp. (In re Genzyme Corp. Sec. Litig.), 754 F.3d 31, 46 (1st Cir. 2014); Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012); Glob. NAPs, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007).

**LEGAL ANALYSIS**

I.      The Court erred in denying summary judgment based on qualified immunity.

In its order, the Court concluded that Scurry and Hartley are not entitled to qualified immunity on the deliberate indifference claim. Specifically, the Court concluded that disputed issues of material fact existed as to whether they acted with the required subjective intent necessary to establish deliberate indifference and the rights in question were clearly established at the time of the alleged violation. With respect to Hartley, the Court concluded, in pertinent part, that "a reasonable official in Nurse Hartley's position would have known that her behavior—conducting very little or no testing in the facility from March through December 2020—amounted to a violation of the plaintiffs' constitutional rights." (ECF Doc. 113 at 46.) With respect to Scurry, the Court concluded, in pertinent part, that "Superintendent Scurry testified to a measure of personal involvement with the contested mask policy, which conflicts with CDC Guidance to the extent that inmates exhibiting symptoms of COVID-19 were prohibited from [wearing] masks in certain common spaces at the jail. . . . On this record, Scurry is not entitled to qualified immunity as a matter of law and is denied summary judgment on that basis." (Id. at 48-49.)

2

The United States Supreme Court has established that government officials, when sued in their individual capacities, are immune from damages unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, 583 U.S. 48, 61 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). Scurry and Hartley address each prong in turn.

A. No Constitutional Violation

The subjective prong of a constitutional violation in this context "mandates a showing of prison administrators' deliberate indifference to [a serious medical need]." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2004). "To show such a state of mind, the plaintiff must provide evidence that the defendant 'had actual knowledge of impending harm, easily preventable,' and yet failed to take the steps that would have easily prevented that harm." Leite v. Bergeron, 911 F.3d 47, 52-53 (1st Cir. 2018) (emphasis added) (quoting Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018)).

The record evidence against Scurry and Hartley, even when viewed in a light most favorable to the plaintiff, fails to provide a sufficient factual basis for a deliberate indifference claim against them. In reaching its conclusion that a genuine issue of fact precluded summary judgment in Scurry's and Hartley's favor, the Court focused on their respective roles relative to masking and testing at HCDOC and the factual disputes associated with the deficiencies pertaining to each. The Court further assessed the record evidence related to other measures undertaken to prevent COVID-19 and concluded:

> To the extent that the defendants maintain that they took reasonable measures to prevent COVID-19 and therefore have satisfied—indisputably on this record and as a matter of law, *see* FED. R. CIV. P. 56—the requirements of the Eighth Amendment, the court disagrees. There are many areas—such as quarantining, cleaning, sanitizing, and housing symptomatic alongside asymptomatic inmates— where the plaintiffs dispute the defendants' contentions about their own safety

3

measures. And, because the plaintiffs are the nonmoving party, the court must take all factual inferences in their favor. Therefore, the defendants have not provided undisputed evidence that they took reasonable measures to prevent the virus.

(ECF Doc. 113) (citation omitted).

Here though, even if this Court construes, as it must, all factual disputes in favor of Plaintiffs, the record evidence fails to establish a claim of deliberate indifference with respect to Scurry and Hartley in this context. While the Court noted factual disputes from Plaintiffs regarding various measures undertaken to combat COVID-19, Plaintiffs' disputes, taken as true, do not aver a complete absence of measures undertaken to combat COVID-19—instead, they pertain to adequacy of the response itself. See (Chaney Dep. 84:2–9); (Porter Dep. 65:8–13.) "[T]he key inquiry is not whether prison officials perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they responded reasonably to the risk." Jones v. Pollard, No. 21-cv-162-GPC(BGS), 2023 WL 4728802, at *7 (S.D. Cal. July 24, 2023) (collecting cases) (simplified); DeBritto v. Coyne-Fague, 685 F. Supp. 3d 53, (D.R.I Aug. 1, 2023) (compiling cases). On this record and construing all inferences in favor of Plaintiffs, Hartley's conduct and Scurry's conduct could be perceived as negligent in nature. But such conduct, in light of the overarching response undertaken by HCDOC in light of the pandemic, does not rise to the level of deliberate indifference. For this reason, Scurry and Hartley request that the Court grant their motion.

B. Clearly Established Law

Even assuming *arguendo* that Plaintiffs could make out a constitutional violation with respect to either Scurry or Hartley, Scurry and Hartley respectfully aver that the Court failed to appropriately assess whether the law was clearly established with respect to each of their respective conduct.

4

In the context of the second prong of the qualified immunity analysis, "'[c]learly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what [they are] doing is unlawful." Wesby, 583 U.S. at 63 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). Within this second prong, there are two elements. "The first element focuses on the clarity of the law at the time of the alleged civil rights violation; this element turns on whether the contours of the relevant right were clear enough to signal to a reasonable official that his conduct would infringe that right." McDonald v. Town of Eastham, 745 F.3d 8, 12 (1st Cir. 2014) (citations and internal quotations omitted). "The second element is more particularized; it turns on whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights." Id.

"A rule is clearly established either when it is 'dictated by controlling authority or a robust consensus of cases of persuasive authority.'" Irish v. Fowler, 979 F.3d 65, 76 (1st Cir. 2020) (quoting Wesby, 583 U.S. at 63)). While the United States Supreme Court has stated that "'general statements of the law are not inherently incapable of giving fair and clear warning' to officers," White v. Pauly, 580 U.S. 73, 79–80 (2017 (quoting United States v. Lanier, 520 U.S. 259, 271 (1997)), and "[a] plaintiff need not find an identical case concluding that a constitutional violation occurred," Penate v. Sullivan, 73 F.4th 10, 18 (1st Cir. 2023), "in light of pre-existing law the unlawfulness must be apparent." White, 580 U.S. at 79–80 (quotation omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." Wesby, 138 S. Ct. at 589.

In reaching its conclusion, the Court began by identifying that Helling v. McKinney, 509 U.S. 25, 33 (1993) "supports Plaintiffs' argument that inmates have long had the right to be free from the risk of serious disease." (ECF Doc. 113 at 44.)  The Court further stated that "as early

5

as 2020, circuit courts had applied *Helling*'s ruling that a prison official could violate a prisoner's right to reasonable safety by ignoring conditions of confinement that pose a significant health risk to detainees in the COVID-19 context." (ECF Doc. 113 at 45) (citing <u>Roman v. Wolf</u>, 977 F.3d 935, 943 (9th Cir. 2020); <u>Gordon v. Burt</u>, No. 23-1775, 2024 WL 1842873, at *2-3 (6th Cir. Apr. 24, 2024); <u>Hampton</u>, 83 F.4th 754, 770 (9th Cir. 2023)). The Court's reliance on various cases within its order was misplaced in the qualified immunity context.

For example, in <u>Roman v. Wolf</u>, the court issued a decision on October 13, 2020 that pertained to an appeal involving a preliminary injunction and the court notably concluded:

> At the time the injunction was issued, Adelanto was so crowded that social distancing to combat the spread of the novel coronavirus was impossible, detainees had inadequate access to masks, guards were not required to wear masks, there was not enough soap or hand sanitizer to go around, detainees were responsible for cleaning the facility with only dirty towels and dirty water, detainees were compelled to sleep less with less than six feet of distance between them, and not all new arrivals were properly quarantined or tested.

<u>Roman</u>, 977F.3d at 943. The <u>Roman</u> court did not appear to reach the issue of whether the law was clearly established based on the specific facts of the case, given its procedural posture. Moreover, the facts associated with <u>Roman</u> are distinguishable from the facts contemplated by the present litigation.

<u>Gordon v. Burt</u> is similarly distinguishable. In <u>Gordon v. Burt</u>, the court, in a decision issued on April 24, 2024, stated:

> [W]e conclude that a reasonable prison official would have understood that she could not exhibit deliberate indifference to the risk to inmate safety presented by the COVID-19 pandemic. Moreover, a reasonable prison official would have understood that, <u>by purposefully commingling infected prisoners with uninfected prisoners,</u> as Gordon alleged here, she was violating the Eighth Amendment. Accordingly, we conclude that the district court erred in ruling that the defendants were entitled to qualified immunity at the pleading stage.

Gordon, 2024 WL 1842873, at *3 (emphasis added). Again, the facts associated with Gordon are distinguishable from the facts and circumstances surrounding Plaintiffs' remaining claims against Scurry and Hartley.

In contrast to certain cases relied upon by the Court, other federal courts have concluded that qualified immunity does apply to shield officials from liability in the COVID-19 context because the law was not clearly established at the time of the purported constitutional violation. See, e.g., Gasaway v. Vigo County Sheriff's Dept., 672 F. Supp. 3d 651, 659 (S.D. Ind. 2023) (concluding, in the context of applying qualified immunity, as follows: "But the issue is whether Sheriff Plasse was on notice that his particular conduct—failing to provide adequate cleaning supplies, failing to implement a universal mask rule before the December 2020 COVID-19 outbreak, and failing to procure COVID-19 tests—violated Plaintiffs' Fourteenth Amendment rights. Plaintiffs have cited no case that suggests as much, and the Court can find none."); Griffin v. Knight, 1-21-cv-00038-TWP-TAB, 2023 WL 1363317, at *4 (S.D. Ind. Jan 31, 2023) ("And although COVID-19 was a new virus, the duty to protect inmates from needless exposure need not be litigated and then established disease by disease. But the issue is whether the Defendants were on notice that their particular conduct—putting over 100 inmates in a dining hall where they could not socially distance so that their dorm could be deep-cleaned—was a violation of Griffin's Eighth Amendment rights. Griffin has cited no case that suggests as much, and the Court can find none." (internal citations and quotations omitted)); Jones v. Burt, Case No. 1:21-cv-41, 2022 WL 4244298, at *5 (W.D. Mich. July 15, 2022) (granting qualified immunity on claim pertaining failure to social distance); Wright v. Gibson, 2022 WL 4717982, at *5 (E.D. Ark. May 2, 2022) ("The Court has located no case finding that a prison official violated an inmate's Eighth Amendment rights by not providing a mask to inmates housed in isolation or

allowing staff approved by the governing Department of Health to return to work."); Cox v. Bal, No. 2:22-cv-00804, 2024 WL 4977193, at *4 (E.D. Cal. Dec. 4, 2024) (concluding that qualified immunity applied to inmate's COVID-19 claims).

Moreover, as referenced in the Defendants' summary judgment submissions, "[t]he COVID-19 pandemic was unprecedented" and "no reasonable person would have anticipated [it]." Ryan v. Nagy, No. 2:20-cv-11528, 2021 WL 6750962, at *9 (E.D. Mich. Oct. 25, 2021). During 2020, "the issues and challenges posed by COVID-19 [were] unlike any other in the modern era" due to the fact that "COVID-19 is, by definition, a 'novel' coronavirus." Tate v. Ark. Dep't of Corr., No. 4:20-cv-558-BSM-BD, 2020 WL 7378805, at *11 (E.D. Ark. Nov. 9, 2020). As the United States District Court for the Western District of Virginia concluded:

> The COVID-19 pandemic was a new and unusual issue, and there was ongoing and changing guidance from health officials at both the state and federal levels. [Prison officials] implemented protocols and policies and procedures to deal with the pandemic, which was a difficult situation for the whole of society and every business, but especially for congregate settings like prisons. Even if some of these policies were insufficient, *and even if they were not always followed*, neither the policies or *occasional lapses* were clearly insufficient to protect prisoners, given the novelty of the virus and the questions—and evolving guidance—as to how to prevent its spread and treat it.... The world's understanding of COVID-19 is constantly evolving, and there is no precedent that would have made it clear to a reasonable official that the measures Defendants took unreasonably responded to the COVID-19 pandemic.

Ross v. Russell, No. 7:20-cv-000774, 2022 WL 767093, at *14 (W.D. Va. March 14, 2022) (emphasis in original and quotation omitted).

Here, Scurry and Hartley respectfully assert that the Court, in relying on the cases contained within its order and reaching its conclusions, identified and applied the clearly established right at a high level of generality. See White, 580 U.S. at 79 (noting the "longstanding principle that 'clearly established law' should not be defined at a high level of generality."). Neither the United States Supreme Court nor United States Circuit Court for the

8

First Circuit appear to have assessed whether the law is clearly established in light of the specific conduct at issue regarding Scurry and Hartley. Rather, when gauged from the perspective of the specific complained-of conduct, Plaintiffs and this Court have not identified "either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." Gray v. Cummings, 917 F.3d 1, 10 (1st Cir. 2019) (internal quotation marks omitted) (citing Wilson v. Layne, 526 U.S. 603, 617 (1999); Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017)). With respect to Scurry, there is no binding case law or a consensus of controlling authority that send a clear signal that a reasonable official in Scurry's position would have known that a mask policy that requires an inmate to not wear a mask during  out-of-cell time while the individual is on their housing unit could rise to the level of a constitutional violation. Similarly, with respect to Hartley, there is no binding case law or a consensus of controlling authority that would send a clear signal that a reasonable official in Hartley's position would have known that conducting little to no testing at HCDOC from March through December 2020 amounted to a violation of Plaintiffs' constitutional rights.

For these reasons, existing precedent did not put the constitutional questions beyond debate. Hunt v. Massi, 773 F.3d 361 (1st Cir. 2014). And the purpose of qualified immunity is to protect "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Scurry and Hartley respectfully aver that the record evidence does not permit an inference that they were either plainly incompetent or knowingly violated the law under these circumstances. As a result, Scurry and Hartley request that the Court grant their motion and conclude that they are entitled to summary judgment on the basis of qualified immunity.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendant Scurry and Hartley's motion.

Respectfully submitted,

**WILLIE SCURRY AND DENISE HARTLEY**

By their counsel,

**GALLAGHER, CALLAHAN & GARTRELL, P.C.**

Date: November 20, 2025          By:    /s/ Matthew V. Burrows
                                        Matthew V. Burrows, Esq. (#20914)
                                        214 N. Main Street
                                        Concord, NH 03301
                                        (603) 228-1181
                                        burrows@gcglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to all counsel of record via the Court's Electronic Filing System.

Date: November 20, 2025          By:    /s/ Matthew V. Burrows
                                        Matthew V. Burrows, Esq. (#20914)