UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kevin Porter, et al.

v.

Civil No. 20-cv-1210-JL
Opinion No. 2026 DNH 043

William Scurry, et al.

## MEMORANDUM ORDER

Defendant Hillsborough County moves for reconsideration of the court's summary judgment ruling denying qualified immunity to two administrators at Hillsborough County Department of Corrections (HCDOC) in this case concerning the conditions of confinement at HCDOC's Valley Street Jail during the COVID-19 pandemic.  The defendants contend that the court committed manifest errors of law in concluding that the summary judgment record could support a finding of deliberate indifference and that the relevant constitutional principles were clearly established at the time of the challenged conduct.  After reviewing the parties' submissions and hearing oral argument, the court agrees that its deliberate indifference analysis was flawed as to the facility's superintendent insofar as it failed to give due consideration to whether the challenged masking policy reflected a deliberative policy judgment rather than a conscious disregard of a known risk.  The court otherwise reaffirms its prior determination that genuine disputes of material fact preclude summary judgment for the facility's head nurse and that qualified immunity cannot be resolved in her favor as a matter of law.  The motion is granted in part and denied in part.

## I.    Legal standards

"The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration." *Perfetto v. New Hampshire State Prison,* 2008 WL 2005550, at *1 (D.N.H. May 8, 2008).  *But see* L.R. 7.2(d) (providing for motions "to reconsider an interlocutory order of the court").  "Courts in the First Circuit generally treat motions to reconsider summary judgment as either a motion to alter or amend judgment under Rule 59(e), or a motion for relief from judgment or order under Rule 60(b), depending on the time such a motion is filed." *Id*. (citing *Perez–Perez v. Popular Leasing Rental, Inc.,* 993 F.2d 281, 284 (1st Cir. 1993).

To succeed on a motion to alter or amend a judgment under Rule 59, the moving party generally must show "that an intervening change in the controlling law, a clear legal error, or that newly discovered evidence warrants modification of the judgment." *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 46 (1st Cir. 2014).  "Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted).

## II.    <u>**Procedural background**</u>

Plaintiffs Kevin Porter and Vincent Chaney, former pretrial detainees at HCDOC's Valley Street Jail, sued HCDOC and several of its employees over the conditions of their confinement during a peak of the COVID-19 pandemic in late 2020. The plaintiffs asserted claims under 42 U.S.C. § 1983, alleging that the defendants exhibited deliberate indifference to their rights to reasonable protection from communicable disease by implementing various policies and practices that subjected them to a substantial risk of contracting COVID-19. The defendants moved for summary judgment.[1] As relevant to this motion to reconsider, the individual defendants argued that they were not deliberately indifferent and, in any event, were entitled to qualified immunity. The court granted summary judgment to the named defendants who were correctional officers at HCDOC during the relevant time period but denied summary judgment to the facility's head nurse and superintendent, Nurse Hartley and Superintendent Scurry. *See Porter v. Scurry*, 808 F.Supp. 3d 231, 267 (D.N.H. 2025).

In analyzing the deliberate indifference claim against Nurse Hartley, the court found that there was a triable question concerning the extent to which Hartley acted with deliberate indifference towards the plaintiffs' risk of COVID-19 exposure by failing to test symptomatic inmates housed in HCDOC's general population during the relevant time period. *Id*. at 256-58. The court emphasized that despite Hartley's apparent understanding of "the risks that a symptomatic inmate presents to other inmates living in close quarters and the necessity of taking reasonable steps to prevent such contact from occurring," the summary judgment record contained conflicting evidence regarding whether any testing of symptomatic inmates actually occurred during the first nine months of the pandemic. *Id*. at 257. The court specifically noted Nurse Hartley's testimony that such testing was available through a partnership with Elliot Hospital, which conflicted with the plaintiffs' testimony that symptomatic individuals were not tested and, in some instances, affirmatively told that testing was not conducted. *Id*. at 256-57. Although Hartley maintained that the plaintiffs received adequate COVID-related care, the court emphasized that deliberate indifference may be established where an official fails to "take reasonable measures" to mitigate a substantial known risk, and that a jury could conclude that "[c]hoosing to turn a blind eye to symptomatic inmates, despite knowledge of the transmissibility of COVID-19 and the availability of testing," amounted to a constitutional violation. *Id*. at 257 (citing *Savino v. Souza*, 459 F. Supp. 3d 317, 331 (D. Mass. 2020) (Young, J.)).

In analyzing the deliberate indifference claim against Superintendent Scurry, the court likewise concluded that genuine disputes of material fact precluded summary judgment on the plaintiffs' § 1983 claim arising out of the alleged prohibition on inmates wearing masks in certain parts of the prison. *Id*. at 258-59. Scurry's primary argument was that the plaintiffs failed to establish his subjective awareness of the challenged masking policy and its risks. *Id*. at 258. The court found that a jury could conclude otherwise, pointing to record evidence indicating that Scurry, as superintendent during

---

[1] Doc. nos. 86, 87.

the relevant period, played a central role in developing and overseeing HCDOC's COVID-19 response, made changes to the facility's COVID-19 protocols based on his review of applicable public health guidance, and was aware that inmates were, for a time, prohibited from wearing masks on housing units for security reasons. *Id*. The court further highlighted a factual dispute as to whether symptomatic inmates were, on at least one occasion, forbidden from wearing masks despite CDC recommendations to the contrary. *Id*. at 259. Against this backdrop, the court reasoned that a rational factfinder could conclude that Scurry acted with deliberate indifference towards the plaintiffs' risk of COVID-19 exposure by knowingly implementing or maintaining a deficient masking policy in the face of a substantial risk of harm. *Id*. at 259.

Based on the reasoning set forth above, the court concluded that "a rational jury could find that Nurse Hartley and Superintendent Scurry violated the plaintiffs' Fourteenth Amendment rights" and, accordingly, that the plaintiffs satisfied the first prong of the two-part qualified immunity test. *Id*. at 260. In addressing whether the law was clearly established, the court relied principally on *Helling v. McKinney*, 509 U.S. 25 (1993), which recognized that inmates have a right to be free from conditions posing an unreasonable risk of serious future harm, and found that this principle applied in the COVID-19 context notwithstanding the virus's novelty. *Id*. at 261-62. It also pointed to early pandemic-era appellate and district court decisions extending *Helling* to COVID-19, emphasizing that liability is not premised on the existence of prior case law addressing the precise disease at issue. *Id*. at 261 (citing *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020); *Sallaj v. U.S. Immigration & Customs Enforcement*, 2020 WL 1975819, at *3 (D.R.I. Apr. 24, 2020); *Gomes v. U.S. Dep't of Homeland Sec.*, 460 F.Supp.3d 132, 146 (D.N.H. 2020) (McCafferty, J.). The court rejected defendants' framing of the right as a guarantee of a "COVID-free environment," explaining instead that the clearly established right was to reasonable protection from known health risks, "like following the CDC Guidance to mask and test symptomatic inmates." *Id*. at 262.

Applying this law to the summary judgment record, the court determined that a reasonable official in Nurse Hartley's position would have understood that failing to test symptomatic inmates, despite the known transmissibility of COVID-19 and the availability of testing, could violate that right. *Id*. at 262-63. It found the same with respect to Superintendent Scurry given the CDC Guidance advising that symptomatic inmates be required to wear masks. *Id*. at 263. Accordingly, the court held that qualified immunity could not be resolved in either official's favor as a matter of law.

## III.    Analysis

The defendants move to alter or amend the judgment under Rule 59(e), arguing that the court committed manifest errors of law in denying qualified immunity. Specifically, they contend that (1) the summary judgment record does not establish deliberate indifference because it reflects, at most, negligence in the face of a broader institutional response to COVID-19, and (2) even if a violation could be found, the law was not so clearly established to put reasonable officials on notice that their conduct was unconstitutional. The court evaluates these arguments in turn.

### a. Deliberate indifference

To survive summary judgment as to their § 1983 claims against Nurse Hartley and Superintendent Scurry, the plaintiffs were required to establish, inter alia, that Hartley and Scurry "possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to [their] health or safety." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). The defendants argue that the court erred in finding that plaintiffs made such a showing because the record does not indicate "a complete absence of measures undertaken to combat COVID-19."[2] Thus, in their view, plaintiffs' claims amount to a challenge to the adequacy of HCDOC's response, which is insufficient as a matter of law to establish a constitutional violation.[3]

This argument misapprehends the governing standard. To establish deliberate indifference, a plaintiff must show "(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Penn v. Escorsio*, 764 F.3d 102, 110 (1st Cir. 2014) (citation omitted). The inquiry, therefore, is not whether officials took *any* action in response to a known danger, but whether they took reasonable measures to abate that danger in light of the risks they understood.

That said, defendants are correct that liability under this standard does not attach where prison officials failed to respond "perfectly" to COVID-19 or to "compl[y] with every CDC guideline." *Jones v. Pollard*, 2023 WL 4728802, at *7 (S.D. Cal. July 24, 2023). The First Circuit Court of Appeals has emphasized that the deliberate indifference standard leaves "ample room for professional judgment," particularly in constrained institutional settings that require administrators "to make difficult trade-offs as to risks and resources." *Battista v. Clarke*, 645 F.3d 449, 453 (1st Cir. 2011) (citing *Farmer*, 511 U.S. at 844). This remains true even where the policies and practices at issue concern a serious health risk like COVID-19: "[t]he known risk of harm is not conclusive," and where officials' decisions reflect a "balancing [of] judgments [that] are within the realm of reason and made in good faith, [their] actions are not 'deliberate indifference.'" *Id.* (citing *Farmer,* 511 U.S. at 844-45). Accordingly, to the extent a prison official has proffered a justification for the challenged policy or practice, the court must consider that explanation in assessing whether the response was constitutionally adequate.

With this framework in mind, the court agrees that its deliberate indifference analysis as to Superintendent Scurry was flawed to the extent that it failed to fully account for HCDOC's stated rationale for the challenged masking policy. As noted above, the court's deliberate indifference finding as to Scurry turned in large part on his awareness that symptomatic inmates went unmasked on the housing unit in direct contravention to CDC guidance. *Porter*, 808 F.Supp.3d at 259. In so doing, however, the court failed to consider HCDOC's stated basis for this deviation from CDC guidance; namely, that masks could impede inmate identification, conceal injuries, or facilitate

---

[2] Mem. Supporting Mot. to Alter Judgment (doc. no. 115-1) at 4.
[3] *Id.*

contraband, and were not necessary in light of the facility's quarantine procedures for newly-arriving inmates. *See id.* at 241. In other words, the record contains undisputed evidence indicating that the masking prohibition was the product of a deliberative professional judgment rather than a knowing disregard of the relevant CDC guidance.

On this record, the court agrees that no reasonable jury could find that Superintendent Scurry acted with deliberate indifference. Though Scurry may well have been negligent in implementing a masking policy that failed to adhere to CDC guidelines for the masking of symptomatic inmates, the deliberate indifference standard is intended to give "latitude to administrators" making healthcare-related judgments in the institutional setting. *Battista*, 645 F.3d at 453. The court cannot say that Scurry's conduct in restricting mask use on the housing unit was so unreasonable as to exceed the bounds of this latitude simply because it diverged materially from CDC recommendations in one respect, particularly where that divergence reflected an effort to balance public health considerations with legitimate institutional concerns, rather than a failure to respond to the risk altogether.[4]

The same cannot be said for the jail's testing measures under Nurse Hartley. Hartley does not dispute the importance of testing symptomatic inmates as a critical tool for preventing the spread of COVID-19. Nor does she contend that testing was infeasible given the constraints of the institutional setting. To the contrary, Hartley maintains that testing was "available for inmates if they exhibited symptoms that were consistent with COVID-19 exposure." *Porter*, 808 F.Supp.3d at 256. *Contrast with Valentine v. Collier, 993 F.3d 270, 286 (5th Cir. 2021)* (prison officials' failure to implement mass testing for facility did not rise to deliberate indifference where officials "recognized the desirability of more frequent testing" but were confined by "scarce resources" and "began to roll-out mass testing when they had capacity to do so"). On that record, a reasonable jury could find that, despite awareness of COVID-19's transmissibility, the availability of testing, and HCDOC's own stated policy, Hartley failed to ensure that symptomatic inmates were tested. Because that failure, if proven, could constitute deliberate indifference, the court reaffirms its finding that the plaintiffs established a triable constitutional violation with respect to Hartley.[5]

---

[4] At oral argument, the plaintiffs argued that the masking policy was unconstitutional because it amounted to an affirmative prohibition preventing inmates from taking a self-protective measure consistent with the CDC guidance. This characterization does not alter the court's analysis. The relevant inquiry is whether Scurry's conduct reflected a knowing disregard of a substantial risk of serious harm, not whether the policy foreclosed individual inmates from adopting recommended precautionary measures. For the reasons discussed above, the undisputed record indicates that the masking restriction was grounded in institutional safety and security considerations, and thus does not support a finding of deliberate indifference.

[5] At oral argument, the defendants argued that reconsideration is warranted because the summary judgment record is devoid of evidence showing that either Superintendent Scurry or Nurse Hartley personally engaged, "in [their] individual capacit[ies]," in conduct violative of the plaintiffs' constitutional rights. This argument was not raised in the defendants' briefing and is

**b. Qualified immunity**

The defendants argue that, even if the summary judgment record could support a finding of a constitutional violation, they are entitled to qualified immunity because the unlawfulness of their conduct was not clearly established with sufficient specificity. Specifically, the defendants contend that the court erred in its qualified immunity analysis because it "identified and applied the clearly established right" at too high a level of generality and relied on cases that do not "address the specific conduct at issue"— namely, with respect to Nurse Hartley, "that conducting little to no testing at HCDOC from March through December 2020 amounted to a violation of Plaintiffs' constitutional rights."[6] In light of the court's revised conclusion that Superintendent Scurry's conduct does not arise to the level of a constitutional violation, the court addresses this argument only as it pertains to Nurse Hartley.

The defendants are correct that the Supreme Court has cautioned against defining a constitutional right "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Still, "a plaintiff need not point to "a case directly on point for a right to be clearly established." *Cintron v. Bibeault,* 148 F.4th 37, 51 (1st Cir. 2025) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). Rather, the relevant inquiry is whether "existing precedent… placed the statutory or constitutional question beyond debate." *Id.* (quoting *White*, 580 U.S. at 73). "In adjudicating this requirement, [the court] look[s] mainly to Supreme Court and First Circuit precedent," but may also consider "cases from other courts, and certain non-case-law sources, like statutes, prison regulations, and government studies and reports." *Id.* (citations omitted).

Here, in assessing whether the law was clearly established, the court explicitly analyzed whether "a reasonable official in Nurse Hartley's position would have known that her behavior—conducting very little or no testing in the facility from March through December 2020—amounted to a violation of the plaintiffs' constitutional rights." *Porter,* 808 F.Supp.3d at 262. In other words, the court conducted precisely the particularized inquiry the defendants now say it should have performed. The court therefore rejects the contention that it applied the clearly established right at an impermissible level of generality.

What remains is the crux of the defendants' challenge: the absence of a case directly on point. As explained above, the existence of such a case is not dispositive of the clearly-established inquiry. The Supreme Court has expressly held that "officials can

---

thus waived. *See Coons v. Industrial Knife Co.*, 620 F.3d 38, 44 (1st Cir. 2010) (explaining that "judges are not obligated to do a party's work for him" and that district courts are "free to disregard" arguments that are not developed in briefs). In any event, the court's earlier ruling found otherwise, reasoning that a trier of fact could find that Hartley "bore ultimate responsibility" for the challenged testing policy and citing factual disputes about the extent to which Hartley knew of but disregarded the risks that policy created. *Porter*, 808 F.Supp.3d at 258-59. The court also expressly rejected the contention that the record must show "[p]ersonal interactions" between Scurry and Hartley and the plaintiffs "for defendants to be liable for the plaintiffs' alleged constitutional violations." *Id.* at 258 n.105.

[6] Mem. Supporting Mot. to Alter Judgment (doc. no. 115-1) at 8-9.

still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Accordingly, while "earlier cases involving 'fundamentally similar' … or 'materially similar' facts" can "strongly support a conclusion that the law is clearly established," neither is "necessary to such a finding." *Id.*  The "salient question" for the court in addressing the clearly-established prong was whether "whether the state of the law in [early 2020] gave [Nurse Hartley] fair warning" that her conduct was unconstitutional. *Id.*

After careful reconsideration, the court reaffirms its conclusion that it was.  Long before the COVID-19 pandemic, *Helling* made clear that prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease" by "ignor[ing] a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."  509 U.S. at 33.  That principle has since been applied to a broad range of health risks facing inmates housed in correctional facilities, including claims arising out of exposure to toxic substances, sexual violence, and several contagious diseases. *See, e.g., Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (permitting an Eighth Amendment claim to proceed based on allegations that prison officials housed contagious and healthy individuals together during a known epidemic of hepatitis C); *Loftin v. Dalessandri*, 3 F.App'x 658, 663 (10th Cir. 2001) (recognizing an Eighth Amendment claim for knowingly housing the plaintiff in a cell with individuals who had tested positive for tuberculosis); *Vega v. Semple*, 963 F.3d 259, 277 (2d Cir. 2020) (failure to remediate known radon exposure constituted deliberate indifference despite some mitigation efforts); *Evariste v. Massachusetts,* 2020 WL 8611029, at *1 (1st Cir. Dec. 22, 2020) (permitting Eighth Amendment claim to proceed based on allegations that inmate was housed together with another inmate known to have previously made sexual demands of him).  And by 2020, a circuit court had applied *Heller* specifically in the COVID-19 context. *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020) (finding that plaintiffs were likely to prevail in establishing constitutional violation under *Helling* based on government's failure to remedy conditions that made "combat[ting] the spread of" COVID-19 "impossible").  Though each of these cases presents a unique set of facts, their shared principle is clear: consciously disregarding a known, serious health risk in an institutional setting violates the Constitution.

The summary judgment record, as described in the court's prior order, *Porter*, 808 F.Supp.3d at 240-44, supports the conclusion that the risks posed by COVID-19 in congregate correctional settings were widely known by early 2020.  Public health authorities, including the CDC, consistently emphasized the virus's high transmissibility and the importance of identifying and isolating infected individuals.  Testing symptomatic individuals was a foundational component of that effort.  The record further reflects that the facility was not operating in an informational vacuum.  It had implemented various policies aimed at mitigating COVID-19 risks and arranged for testing of symptomatic inmates to be conducted off-site at a partnering hospital, thus demonstrating institutional awareness of the danger posed by the virus and the need for responsive measures.

Against this backdrop, a reasonable official in Hartley's position would not have needed a case directly on point to understand that conducting little to no testing of symptomatic inmates over a nine-month period despite the undisputed transmissibility and severity of COVID-19 could amount to a constitutional violation. While the defendants correctly argue that the COVID-19 pandemic presented novel challenges, this is not a case where the undisputed facts establish mere uncertainty at the margins of evolving guidance or a reasonable, if imperfect, exercise of professional judgment. Rather, it presents evidence from which a jury could find that the jail, under Hartley's policy-making authority, made a conscious decision not to address a known and substantial risk of COVID-19 exposure. That distinguishes this case from those cited by defendants in which courts have extended qualified immunity to officials whose COVID-19 responses, however imperfect, reflected genuine efforts to navigate a difficult and unprecedented situation in good faith. *See, e.g., Gasaway v. Vigo County Sheriff's Dept.,* 672 F. Supp. 3d 651, 659 (S.D. Ind. 2023) (granting qualified immunity where the undisputed evidence showed that COVID-19 protective measures were implemented at the recommendation of the county health department); *Griffin v. Knight,* 2023 WL 1363317, at *4 (S.D. Ind. Jan. 31, 2023) (granting qualified immunity where the challenged conduct—placing over 100 inmates in a dining hall where they could not socially distance—was undertaken so that inmates' housing unit could be deep-cleaned).

The court therefore reaffirms its conclusion that qualified immunity cannot be resolved in Nurse Hartley's favor as a matter of law, and her request for summary judgment on that basis is denied.

## IV.    Conclusion

Accordingly, on reconsideration, the court GRANTS the defendants' motion for reconsideration as it pertains to the denial of summary judgment for Superintendent Scurry.[7] The defendants' motion to amend or alter judgment is otherwise DENIED.

SO ORDERED.

Joseph N. Laplante
United States District Judge

Date: April 21, 2026

cc: Counsel of Record

---

[7] Doc. no. 116.